**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

JOHN DOE, individually and on behalf of all others
similarly situated,

                        Plaintiff,

       v.

VANDERBILT UNIVERSITY,

                   Defendant.

No. 3:20-cv-00356

Judge William L. Campbell, Jr.

Magistrate Judge Jeffrey S. Frensley

<u>JURY TRIAL DEMANDED</u>

## <u>AMENDED CLASS ACTION COMPLAINT</u>

# TABLE OF CONTENTS

**Page**

I.      NATURE OF ACTION ......................................................................................................1

II.     JURISDICTION AND VENUE ......................................................................................2

III.    PARTIES .............................................................................................................................3

IV.     FACTS .................................................................................................................................5

       A.      Background ...........................................................................................................5

       B.      The Novel Coronavirus Shutdowns And Defendant's Campus Closure .................7

       C.      Defendant's Refusal To Issue Appropriate Tuition, Fee, And Room And
           Board Refunds ....................................................................................................12

V.      CLASS ACTION ALLEGATIONS ..............................................................................14

VI.     CAUSES OF ACTION ....................................................................................................17

       COUNT I BREACH OF CONTRACT..........................................................................17

       COUNT II UNJUST ENRICHMENT ...........................................................................22

       COUNT III CONVERSION ...........................................................................................24

PRAYER FOR RELIEF ...........................................................................................................26

JURY DEMAND ........................................................................................................................267

Case 3:20-cv-00356   Document 34   Filed 07/13/20   Page 2 of 30 PageID #: 169

Plaintiff, John Doe, individually and on behalf of all others similarly situated, for his Amended Class Action Complaint against Defendant Vanderbilt University ("Vanderbilt"), based upon personal knowledge as to his own actions and based upon the investigation of counsel regarding all other matters, complains as follows:

## I.     NATURE OF ACTION

1.     This Amended Class Action Complaint comes during a time of hardship for so many Americans, with each day bringing different news regarding the novel coronavirus COVID-19.[1] Social distancing, shelter-in-place orders, and efforts to 'flatten the curve' prompted colleges and universities across the country to shut-down their campuses, evict students from campus residence halls, and switch to online "distance" learning.

2.     Despite sending students home and closing its residence halls, Defendant continues to charge for tuition, fees, and room and board as if nothing has changed, continuing to reap the financial benefit of millions of dollars from students. Defendant does so despite students' complete inability to continue school as normal, occupy campus buildings and dormitories, or avail themselves of school programs and events. So while students enrolled and paid Defendant for a comprehensive academic experience, Defendant instead offers Plaintiff and the Class Members something far less: a limited online experience presented by Google or Zoom, void of face-to-face faculty and peer interaction, separated from program resources, and barred from facilities vital to study. Plaintiff and the Class Members did not bargain for such an experience.

---

[1] Plaintiff and Plaintiff's counsel are mindful of the severe impact of the coronavirus on all aspects of society. Plaintiff is compelled, however, to file now to preserve his rights and those of the proposed class. To minimize the burden on the Court and to reasonably accommodate Defendant, Plaintiff will work with Defendant to reach an agreeable schedule for their response to this Amended Class Action Complaint.

3.    While some colleges and universities have promised appropriate and/or proportional refunds, Defendant excludes itself from such other institutions treating students fairly, equitably, and as required by the law. Defendant has refused to provide any tuition or fee refund for the Spring 2020 semester. Defendant only offered minimal adjustments for housing and meal plans, with arbitrary penalties based on the date students were able to vacate the student residential housing. If students were unable to leave campus before March 30, 2020, Defendant decided students would receive no housing or meal plan reimbursement at all for services they were not utilizing.

4.    As a result, Defendant's actions have financially damaged Plaintiff and the Class Members. Plaintiff brings this action because Plaintiff and the Class Members did not receive the full value of the services paid and did not receive the benefits of in-person instruction and are seeking reimbursement of tuition, fees, and room and board on a pro-rata basis. They have lost the benefit of their bargain and/or suffered out-of-pocket loss and are entitled to recover compensatory damages, trebling where permitted, and attorney's fees and costs.

## II.    JURISDICTION AND VENUE

5.    This Court has jurisdiction over the subject matter presented by this amended complaint because it is a class action arising under the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005), which explicitly provides for the original jurisdiction of the Federal Courts of any class action in which any member of the Class is a citizen of a State different from any Defendant, and in which the matter in controversy exceeds in the aggregate sum of $5,000,000.00, exclusive of interest and costs. Plaintiff alleges that the total claims of individual Class Members in this action are in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs, as required by 28 U.S.C. §§ 1332(d)(2) and (6). Plaintiff is a citizen of Illinois, whereas Defendant is a citizen of Tennessee for purposes of diversity. Therefore,

-2-

diversity of citizenship exists under CAFA as required by 28 U.S.C. § 1332(d)(2)(A). Furthermore, Plaintiff alleges that more than two-thirds of all of the members of the proposed Class in the aggregate are citizens of a state other than Tennessee, where this action is originally being filed, and that the total number of members of the proposed Class is greater than 100, pursuant to 28 U.S.C. § 1332(d)(5)(B).

6.      Venue is appropriate in this District because Defendant is located within the Middle District of Tennessee. And on information and belief, events and transactions causing the claims herein, including Defendant's decision-making regarding its refund policy challenged in this lawsuit, has occurred within this judicial district.

### III.    PARTIES

7.      Plaintiff is a citizen and resident of the State of Illinois. Plaintiff was enrolled as a full-time student for the Spring 2020 academic term at Defendant. Plaintiff is in good financial standing at Defendant, having paid in whole or in combination tuition, fees, costs, and/or room and board charges assessed and demanded by Defendant for the Spring 2020 term. Plaintiff paid Defendant for opportunities and services that he did not receive, including on-campus education, facilities, services, and activities.

8.      Plaintiff was a freshman living in the Defendant's student residential housing. The residential campus—requiring a majority of students to live in student housing—is considered an "integral part" of the Vanderbilt education.

9.      Plaintiff enjoyed Defendant's rigorous academics and small student-to-professor ratio in his course work.

10.      He recently joined a fraternity and was looking forward to taking advantage of Defendant's many student amenities upon returning from spring break. Plaintiff was planning to

participate in a club's events and looking forward to the Rites of Spring—the annual outdoor concert on campus.

11.     When Plaintiff returned from spring break on March 9, 2020, he was informed by Defendant that classes would be cancelled for the week and not rescheduled.

12.     On March 11, 2020, Plaintiff was informed he should plan to leave campus no later than March 15, 2020 and courses would resume online on March 16, 2020.

13.     With little notice, Plaintiff packed up his course materials and laptop and moved out of residential housing. The majority of his belongings remain in the dorms and he is unsure when he will be able to collect them.

14.     After transitioning to full online courses, many of Plaintiff's courses were shortened. One class was a lab involving a field trip to a local river. Lab courses and field trips are difficult to simulate online and students were left reviewing photos of the river instead. Another class shifted to asynchronous learning, where Plaintiff had no interaction with the professor or classmates.

15.     Plaintiff chose Vanderbilt due to the accessibility of professors and camaraderie with brilliant classmates in both the classroom and residential housing, but was unable to connect with professors and classmates on the same level online. Robust course discussion with students of differing viewpoints has been severely limited. The quality and academic rigor of courses significantly decreased.

16.     On March 20, 2020, Plaintiff inquired regarding a refund for tuition, fees, and room and board. The same day he received a response from the Office of the Chancellor that "all students who left campus by March 22 will receive adjustments for housing and meals." And "the university

-4-

made the decision that tuition and fees will remain the same for the Spring 2020 term, and no tuition rates will be discounted or adjusted due to the current situation."

17.     Defendant Vanderbilt is an institution of higher learning located in Nashville, Tennessee. Defendant provides Class Members with campus facilities, in-person classes, as well as a variety of other facilities for which Defendant charges Plaintiff and the Class Members.

## IV.     FACTS

### A.     Background

18.     Founded in 1873, Vanderbilt has a current enrollment of approximately 13,131 undergraduate, graduate, and professional students, with 6,886 undergraduate students, across 69 Bachelor's Degree programs.

19.     As of June 30, 2019, Defendant's endowment totaled $6.3 billion, which is one of the 25 largest endowments in the United States. In fiscal year 2019, endowment distributions comprised 18 percent of the university's operating budget. The remaining 82 percent came from other sources such as grants and contracts, student tuition and fees, and current use philanthropy.

20.     In fiscal year 2019, Defendant made $319 million in net tuition and fees—a $20 million increase from the year before due to changes in student enrollment, credit hours, and board approved increases in tuition rates. Operating revenues without donor restrictions increased to $1.43 billion.

21.     In 2018–19, Defendant received several large gifts including a $25 million gift from the Lee and Ramona Bass Foundation to establish the Bass Military Scholars Program, $12.75 million gift from former Vanderbilt Board of Trust chairman Mark Dalton, JD'75, and his family to support the Law and Business program at Vanderbilt Law School, and a $10 million gift from Jennifer R. Frist, BS'93, and husband William R. "Billy" Frist to endow the Frist Center for Autism and Innovation in the School of Engineering.

-5-

22.     On April 4, 2019, more than 8,200 donors gave $9.4 million to Defendant in just 24-hours for its Giving Day fundraising campaign.

23.     While many schools nationwide offer and highlight remote learning capabilities as a primary component of their efforts to deliver educational value (*see, e.g.*, Western Governors University, Southern New Hampshire University, University of Phoenix-Arizona), Defendant is not such a school.

24.     Rather, a significant focus of Defendant's efforts to obtain and recruit students pertains to the campus experience it offers along with face-to-face, personal interaction with skilled and renowned faculty and staff.

25.     A few examples of such efforts to promote that experience follow: Defendant encourages balance, where students "balance academics, student activities, and social life in an environment that brings students, faculty, and staff from differing backgrounds, viewpoints, and life experiences together as one."[2] Vanderbilt promotes as a great strength its residential living-learning model, requiring the majority of undergraduates to live in university housing to provide invaluable connections, camaraderie, and support among students. Defendant boasts a 330-acre park-like campus, 430+ student organizations, 120+ study abroad programs in 36 countries on 6 continents, an exciting Division I athletics program, and opportunities to enjoy Nashville's vibrant music and arts scene. Other opportunities include leadership development, student government, work study, counseling, wellness centers, outdoor recreation, Greek Life, and student-run organizations.

26.     To obtain such educational opportunities and activities, Plaintiff and the Class Members pay, in whole or in part, significant tuition, fees, and room and board.

_____

[2] https://admissions.vanderbilt.edu/life/.

27. For the Spring 2020 term, Defendant assessed the following: $25,400.00 for tuition, $2,933.00 for a first year meal plan, $5,522.00 for housing for a total of $34,490.00. At the beginning of the school year, students paid annual fees including $836.00 for a first year experience fee, $1,270.00 for student services fees, and a $100.00 transcript fee. Some students also pay $2,350.00 for student health insurance if they do not already have a health insurance plan.

**B. The Novel Coronavirus Shutdowns And Defendant's Campus Closure**

28. On December 31, 2019, governmental entities in Wuhan, China confirmed that health authorities were treating dozens of cases of a mysterious, pneumonia-like illness. Days later, researchers in China identified a new virus that had infected dozens of people in Asia, subsequently identified and referred to as the novel coronavirus, or COVID-19.

29. By January 21, 2020, officials in the United States were confirming the first known domestic infections of COVID-19.

30. Due to an influx of thousands of new cases in China, on January 30, 2020, the World Health Organization officially declared COVID-19 as a "public health emergency of international concern."

31. By March 11, 2020, the World Health Organization declared COVID-19 a pandemic.

32. Travel and assembly restrictions began domestically in the United States on March 16, 2020, with seven counties in the San Francisco, California area announcing shelter-in-place orders. Other states, counties, and municipalities have followed the shelter-in-place orders and as of April 6, 2020, 297 million people in at least 38 states, 48 counties, 14 cities, the District of Columbia, and Puerto Rico are being urged or directed to stay home.

33. On March 22, 2020 local officials announced "Safer at Home" orders. On March 22, 2020, Nashville Mayor John Cooper and the Chief Medical Director of Health, Dr. Michael C.

-7-

Caldwell, issued Order #3 of the Metro Public Health Department "Safer at Home" order, urging citizens of Nashville and Davidson County to "shelter at home as much as possible" and directing all non-essential Nashville businesses to close for 14 days effective at 12:01 a.m. on March 23, 2020. That same day Tennessee Governor Bill Lee issued Executive Order No. 17 prohibiting social gatherings of 10 or more people, closing restaurants to dine-in service, and closing gyms and similar facilities through April 6, 2020.

34.     On March 30, 2020, Governor Lee issued Executive Order No. 22 directing Tennesseans to "stay home unless engaging in essential activities to limit their exposure to and the spread of COVID-19" through April 14, 2020. On April 1, 2020, Nashville Mayor John Cooper and the Chief Medical Director of Health, Dr. Michael C. Caldwell, amended and extended Order #3 "Safer at Home" Order through April 24, 2020.

35.     Local leaders again extended the Stay-at-Home orders with Governor Lee signing Executive Order No. 27 to extend the Stay-at-Home order until April 30, 2020 and Nashville Mayor John Cooper extending the "Safer at Home" Order through May 1, 2020.

36.     On March 5, 2020, the first case of COVID-19 was confirmed in Tennessee.

37.     On March 9, 2020, Susan R. Wente, Vanderbilt's Interim Chancellor and Provost announced several students had been exposed to a person who tested positive for COVID-19 upon returning from spring break.[3] Interim Chancellor and Provost Wente cancelled all classes for the remainder of the week and announced the move to online and alternative learning options from March 16 through at least March 30, 2020.

38.     Each instructor and each course was given the ability to make a decision about the appropriate means of online instruction due to the nature of the course.

---

[3] https://www.vanderbilt.edu/coronavirus/2020/03/09/mar-9-2020-classes-suspended/.

39.     Additionally, all university sponsored non-Athletic events and gatherings, including events sponsored by student organizations were cancelled through April 30, 2020.

40.     Vanderbilt determined these policies were "current best-practices regarding social distancing as a prevention strategy for disease transmission."[4]

41.     However, just two days later, on March 11, 2020, Defendant received notice from Vanderbilt University Medical Center that a VUMC healthcare worker tested positive for COVID-19. Therefore, "[o]ut of an abundance of caution and based on public health recommendations and best practices," Interim Chancellor and Provost Wente announced all classes would be moved to online and alternative learning for the remainder of the semester and undergraduate students living in residence halls should move out by March 15, 2020.[5] Classes were scheduled to resume using online and alternative learning on March 16, 2020 through the remainder of the semester.

42.     Defendant announced that the University would remain open and staff was expected to work their normal schedule. The decision to close the student residence halls was based on "different public health concerns than our other facilities: They are the students' homes, where they eat, sleep, bathe and socialize," and sending students home was a preventative measure.[6]

43.     Such closures and cancellations present significant loss to Plaintiff and the Class Members.

44.     College students across the country have offered apt descriptions of the loss they have experienced as a result of the pandemic, highlighting the disparity between students'

---

[4] *Id.*
[5] https://www.vanderbilt.edu/coronavirus/2020/03/11/community-alternative-education/.
[6] https://www.vanderbilt.edu/coronavirus/2020/03/11/mar-11-2020-message-to-staff-about-alternative-education-for-remainder-of-semester/.

-9-

bargained for educational experience and the experience that colleges and universities, including Defendant, now provide.

45.    For example, as reported in The Washington Post, one student "wonders why he and others . . . are not getting at least a partial tuition refund. Their education, as this school year ends in the shadow of a deadly pandemic, is nothing like the immersive academic and social experience students imagined when they enrolled. But tuition remains the same: $27,675 per semester . . . 'Our faculty are doing a good job of working with us,' said Patel, 22, who is from New Jersey. 'But at the end of the day, it's not the same as in-person learning. . . . It shouldn't just be a part of the business model where, no matter what happens, you have to pay the same amount. The cost needs to reflect some of the realities.'"[7]

46.    As another example, as reflected in a Change.org petition, with nearly 5,000 supporters, students at another major university highlight the loss experienced by students: "As a result of the COVID-19 global pandemic crisis, Governor Pritzker has declared a state of emergency in Illinois. In response, Northwestern University made the sensible decision to offer all Spring 2020 courses online for the start of the quarter and will likely extend this to the rest of the quarter as the situation worsens. While this is certainly the right call to ensure the health and safety of all students, Northwestern's tuition and fees do not accurately reflect the value lost by switching to online education for potentially an entire term. For the following reasons, we are seeking a partial refund of tuition and full refund of room and board for the Spring 2020 quarter. Since Northwestern is a top private university, the estimated annual cost of attendance of $78,654 goes towards a comprehensive academic experience that cannot be fully replicated online. Due to the

_____

    [7] https://www.washingtonpost.com/education/2020/04/16/college-students-are-rebelling-against-full-tuition-after-classes-move-online/.

-10-

COVID-19 crisis, students paying for the Northwestern experience will no longer have access to invaluable face-to-face interaction with faculty, resources necessary for specific programs, and access to facilities that enable learning."[8]

47.     Another university's student newspaper reflects another example: "At this time, most of the campus and dorms need not be rigorously maintained. No events will be held, nor speakers hosted. The world-class education that consists in having opportunities to work and interact with academics and peers (not to mention the vast numbers of innovators, creators, doctors, organizers, and more that congregate on our campus) will no longer be provided."[9]

48.     On March 19, 2020 Vanderbilt's Student Government Senators passed a resolution via Zoom vote requesting Vanderbilt reimburse students for unused services such as the meal plan fee, housing fee, student service fee, and residential college experience.[10]

49.     Vanderbilt students via a Change.org petition, with nearly 1,000 signatures are seeking a partial refund of Spring semester tuition noting: "Face-to-face classes have been suspended for the entire semester and on-campus students have been mandated to return home. We are no longer able to benefit from many of the programs and services that we have paid for this semester. Without a partial refund, Vanderbilt students would be expected to pay for student services and activities (ex. the Vanderbilt Recreation center, student health, libraries), resource complexes, and other resources that we receive no benefits from unless we are physically present on campus. . . . In short, since Vanderbilt students are currently paying for numerous services that we are not able to benefit from away from campus and are taking our classes online, we are entitled

---

[8] https://www.change.org/p/northwestern-university-tuition-fees-reduction-for-spring-2020.
[9] https://www.chicagomaroon.com/article/2020/3/19/uchicago-lower-tuition-spring-2020/.
[10] https://vanderbilthustler.com/31182/featured/vsg-senate-passes-resolution-requesting-vanderbilt-reimburse-undergraduates-for-housing-and-meal-plans/.

to a partial tuition refund. As an institution that prides itself on financial inclusivity and prioritizing its students' needs, we hope that Vanderbilt University empathizes with and fulfills our request."[11]

## C.     Defendant's Refusal To Issue Appropriate Tuition, Fee, And Room And Board Refunds

50.     Given Defendant's transition to online classes and COVID-19 concerns, Defendant asked students to vacate student housing as soon as possible and no later than March 15, 2020. Classes began online on March 16, 2020.

51.     Defendant announced tuition and fees will remain the same for the Spring 2020 term because coursework is still being taught online.

52.     And while Defendant has not forced students to leave student housing, Defendant has explicitly encouraged students to consider moving out of student housing to a family residence or living environment that minimizes contact with others. Many students have followed the Defendant's instructions and moved off campus. When students follow the Defendant's instructions, they are no longer receiving room and board services. Likewise, when student services are curtailed or eliminated, students should not be forced to pay for services they cannot use.

53.     Defendant, however, is refusing to give full prorated refunds for room and board when a student leaves campus at the University's instruction. Defendant only agreed to provide housing and meal plan adjustments, but not equal to the number of days the student has paid room and board for the remaining Spring term.

54.     Specifically, Defendant agreed to provide the following housing adjustments based on the date the student left campus: (1) $1,380.00 if the student left by March 17, 2020; (2) $690

---

[11] https://www.change.org/p/vanderbilt-university-partially-refund-vanderbilt-students-tuition-for-spring-semester.

-12-

if the student left between March 18–29, 2020; and (3) no housing adjustment if the student left campus on March 30, 2020 or later.

55.     Defendant agreed to provide the following dining adjustments based on the date the student left campus and their respective meal plan: (1) $677 for the 21-meal plan, $657 for the 18-meal plan, $578 for the 14-meal plan, and $353 for the 8-meal plan plus any unused Meal Money in the student's account if the student left by March 17, 2020; (2) half of the adjustments listed above plus any unused Meal Money in the student's account if the student left between March 18–29, 2020; and (3) no dining adjustment or unused Meal Money if the student left campus March 30, 2020 or later.

56.     Any adjustments will be applied to any outstanding balances on the student's account first.

57.     The housing and meal plan adjustments are arbitrary, unfairly prorated, and penalize students by half of the reimbursement if they were unable to leave campus within 12 days, and completely deny reimbursement for services if students were unable to leave campus before March 30, 2020.

58.     Any adjustments will be applied to any outstanding balances on the student's account first.

59.     Defendant has also refused to give a prorated refund for fees paid for student services students could not use because those services were curtailed, eliminated, or because the student followed the university's instruction to leave the campus and return home.

60.     Defendant received $2.8 million in taxpayer funding as part of the Coronavirus Aid, Relief, and Economic Security Act (CARES) Act.

## V. CLASS ACTION ALLEGATIONS

61.     Plaintiff sues under Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, on behalf of himself and a Class defined as follows:

> All persons enrolled at Defendant for the Spring 2020 term who paid Defendant, in whole or in part, tuition, fees, and/or room and board for in-person instruction and use of campus facilities, but were denied use of and/or access to in-person instruction and/or campus facilities by Defendant.

Excluded from the Class is Defendant, any entity in which Defendant has a controlling interest, and Defendant's legal representatives, predecessors, successors, assigns, and employees. Further excluded from the Class is this Court and its employees. Plaintiff reserves the right to modify or amend the Class definition including through the creation of sub-classes if necessary, as appropriate, during this litigation.

62.     The definition of the Class is unambiguous. Plaintiff is a member of the Class Plaintiff seeks to represent. Class Members can be notified of the class action through contact information and/or address lists maintained in the usual course of business by Defendant.

63.     Per Rule 23(a)(1), Class Members are so numerous and geographically dispersed that their individual joinder of all Class Members is impracticable. The precise number of Class members is unknown to Plaintiff but may be ascertained from Defendant's records. However, given the thousands of students enrolled at Defendant in a given year, that number greatly exceeds the number to make joinder possible. Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

64.     Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the Class Members, making appropriate final injunctive relief and declaratory relief regarding the Class under Rule 23(b)(2).

65.     Consistent with Rule 23(a)(2), Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by the Class Members. Similar or identical legal violations are involved. Individual questions pale by comparison to the numerous common questions that predominate. The injuries sustained by the Class Members flow, in each instance, from a common nucleus of operative facts—Defendant's campus closure and student evictions, its complete transition to online classes, and Defendant's refusal to fully refund tuition, fees, and/or room and board.

66.     Additionally, common questions of law and fact predominate over the questions affecting only individual Class Members under Rule 23(a)(2) and Rule 23(b)(3). Some of the common legal and factual questions include:

      a.      Whether Defendant engaged in the conduct alleged;

      b.      Whether Defendant has a policy and/or procedure of denying refunds, in whole or in part, to Plaintiff and the Class Members;

      c.      Whether Defendant breached identical contracts with Plaintiff and the Class Members;

      d.      Whether Defendant violated the common law of unjust enrichment;

      e.      Whether Defendant converted Plaintiff's and the Class Members' refunds and/or rights to refunds; and

      f.      The nature and extent of damages and other remedies to which the conduct of Defendant entitles the Class Members.

67.     The Class Members have been damaged by Defendant through its practice of denying refunds.

68.     Plaintiff's claims are typical of the claims of the other Class Members under Rule 23(a)(3). Plaintiff is a student and was enrolled at Defendant for the Spring 2020 term. Like other Class Members, Plaintiff was instructed to leave Defendant's campus, forced to take online classes, and was completely or partially denied a refund for tuition, fees, and/or room and board.

69.     Plaintiff and Plaintiff's counsel will fairly and adequately protect the interests of the Class as required by Rule 23(a)(4). Plaintiff is familiar with the basic facts that form the bases of the Class Members' claims. Plaintiff's interests do not conflict with the interests of the other Class Members he seeks to represent. Plaintiff has retained counsel competent and experienced in class action litigation and intends to prosecute this action vigorously. Plaintiff's counsel has successfully prosecuted complex class actions, including consumer protection class actions. Plaintiff and Plaintiff's counsel will fairly and adequately protect the interests of the Class Members.

70.     The class action device is superior to other available means for the fair and efficient adjudication of the claims of Plaintiff and the Class Members under Rule 23(b)(3). The relief sought per individual members of the Class is small given the burden and expense of individual prosecution of the potentially extensive litigation necessitated by the conduct of Defendant. It would be virtually impossible for the Class Members to seek redress individually. Even if the Class Members themselves could afford such individual litigation, the court system could not.

71.     In addition, under Rule 23(b)(3)(A), individual litigation of the legal and factual issues raised by the conduct of Defendant would increase delay and expense to all parties and to the court system. The class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economies of scale, and comprehensive supervision by a single court.

72.     Under Rule 23(b)(3)(C), it is desirable to concentrate the litigation of the claims of Plaintiff and the Class Members in this forum given that Defendant is located within this judicial district and discovery of relevant evidence will occur within this district.

73.     Given the similar nature of the Class Members' claims and the absence of material differences in the state statutes and common laws upon which the Class Members' claims are based, a nationwide Class will be easily managed by the Court and the parties per Rule 23(b)(3)(D).

## VI.     CAUSES OF ACTION

### COUNT I
### BREACH OF CONTRACT

74.     Plaintiff restates and re-alleges, and incorporates herein by reference, the preceding paragraphs as if fully set forth herein.

75.     Plaintiff and the Class Members applied for and received an offer of admission to attend in-person classes and access to Defendant's academic and housing facilities.

76.     Plaintiff and the Class Members accepted the offer of admission and enrolled at Defendant.

77.     As valuable consideration, Plaintiff and Class Members paid Defendant tuition, fees, and room and board charges.

78.     Plaintiff and Class Members paid tuition, fees, and room and board charges with the understanding and reasonable expectation that Defendant would provide in-person instruction, access to Defendant's facilities, and housing services in their bargained for exchange.

79.     A material term of the bargain and contractual relationship—whether express or implied—is that Vanderbilt would provide in-person instruction and access to Defendant's facilities and housing services.

80.     Defendant's usual and customary practices when students register for on-campus courses and pay tuition for such courses is to provide in-person instruction, access to Defendant's facilities, and housing services.

81.     Plaintiff and the Class Members had the reasonable expectation that Defendant would provide the in-person educational experience and use of its facilities provided in Defendant's publications, including but not limited to catalogs, manuals, handbooks, bulletins, circulars, regulations, brochures, advertisements, and other promotional materials.

82.     As noted above in ¶¶ 24–25, a significant focus of Defendant's publication efforts to obtain and recruit students pertains to the campus experience it offers along with face-to-face, personal interaction with skilled and renowned faculty and staff. Specific examples from Defendant's publications follow.

83.      Defendant markets on campus life as a key component of the Vanderbilt experience where students "balance academics, student activities, and social life in an environment that brings students, faculty, and staff from differing backgrounds, viewpoints, and life experiences together as one."[12]

84.     Beginning with the welcome letter to enrolled students from Provost Wente in the InsiderVU guide, students are encouraged "to take advantage of all that Vanderbilt has to offer" including "developing deep friendships through The Martha Rivers Ingram Commons" and "engaging with the countless distinguished thought leaders" on campus. Attached hereto as Exhibit A.

85.     The campus experience is highlighted in the welcome materials noting "[r]esidential colleges are central to realizing Vanderbilt's vision for providing undergraduate

_____

[12] https://admissions.vanderbilt.edu/life/.

-18-

students with a transformative educational experience. The aim is to provide a rich and diverse intellectual community that cultivates lifelong learning through close proximity to faculty and staff who live, learn and work in partnership with students." *See* Ex. A. at 13.

86.     In the InsiderVU guide, Provost Wente acknowledges, "In our residential colleges, students and faculty develop a strong sense of community, where they listen and learn from each other, extending education well beyond the classroom. The residential colleges are an important part of our mission to educate the whole person in preparation for their futures as leaders and engaged citizens." *Id.* Vice Provost for Academic Affairs and Dean of Residential Faculty Vanessa Beasley, notes "Residential colleges are places of real community, places where students learn, laugh, listen, study, and yes, event rest. . . . They are places where the university's mission of discovery, teaching, and service comes alive in dynamic ways." *Id.*

87.      "Life in a residential college sparks creativity, builds community, supports student success, and extends educational opportunities beyond the classroom. Together, with campus partners, the residential colleges offer support for students to make the most of experiential learning at Vanderbilt." *Id.*

88.     The promotional materials welcoming admitted students note students "are about to join a vibrant, intellectually challenging and diverse community where opportunity and new experiences can be found at every turn." Attached hereto as Exhibit B. Students will "feel at home at Vanderbilt, where academic challenges are always balanced with fun and fulfilling connections with others." Ex. B at 1.

89.     The promotional materials continue: "[l]earning at Vanderbilt takes place 24 hours a day, 7 days a week, whether you are in the classroom, attending a special guest lecture, eating dinner with your professor, participating in African drum lessons with other residents of your

-19-

Case 3:20-cv-00356   Document 34   Filed 07/13/20   Page 21 of 30 PageID #: 188

students with a transformative educational experience. The aim is to provide a rich and diverse intellectual community that cultivates lifelong learning through close proximity to faculty and staff who live, learn and work in partnership with students." *See* Ex. A. at 13.

86.     In the InsiderVU guide, Provost Wente acknowledges, "In our residential colleges, students and faculty develop a strong sense of community, where they listen and learn from each other, extending education well beyond the classroom. The residential colleges are an important part of our mission to educate the whole person in preparation for their futures as leaders and engaged citizens." *Id.* Vice Provost for Academic Affairs and Dean of Residential Faculty Vanessa Beasley, notes "Residential colleges are places of real community, places where students learn, laugh, listen, study, and yes, event rest. . . . They are places where the university's mission of discovery, teaching, and service comes alive in dynamic ways." *Id.*

87.      "Life in a residential college sparks creativity, builds community, supports student success, and extends educational opportunities beyond the classroom. Together, with campus partners, the residential colleges offer support for students to make the most of experiential learning at Vanderbilt." *Id.*

88.     The promotional materials welcoming admitted students note students "are about to join a vibrant, intellectually challenging and diverse community where opportunity and new experiences can be found at every turn." Attached hereto as Exhibit B. Students will "feel at home at Vanderbilt, where academic challenges are always balanced with fun and fulfilling connections with others." Ex. B at 1.

89.     The promotional materials continue: "[l]earning at Vanderbilt takes place 24 hours a day, 7 days a week, whether you are in the classroom, attending a special guest lecture, eating dinner with your professor, participating in African drum lessons with other residents of your

Ingram Commons house, or exploring Nashville." Ex. B at 2. At Vanderbilt, "promising scholars connect with top innovators in every discipline" and have opportunities to "work alongside faculty" on exciting research. Ex. B at 2, 5.

90.     Defendant's 2019–2020 Student Handbook provides "[t]he residential experience is regarded as an integral part of a Vanderbilt undergraduate's education."[13] The Handbook further emphasizes that "Vanderbilt is a residential University" and "all unmarried undergraduate students are required to live in residence halls on-campus during the academic year" unless the University grants a student authorization to live off-campus or in Greek housing.[14]

91.     Defendant promotes as a great strength the on-campus residential living-learning model which "supports the academic experience, furthering a student's growth and development."[15] The residential experience fosters invaluable connections, camaraderie, and support among students where "values of scholarship and leadership are nurtured in a culture of collegiality."[16] Defendant notes the "residential community provides the opportunity for a well-rounded academic and social experience."[17]

92.     Defendant boasts a 330-acre park-like campus, 430+ student organizations, 120+ study abroad programs in 36 countries on six continents, an exciting Division I athletics program, and opportunities to enjoy Nashville's vibrant music and arts scene.[18]

---

[13] https://www.vanderbilt.edu/student_handbook/residential-life/.

[14] *Id.*

[15] https://admissions.vanderbilt.edu/life/.

[16] *Id.*

[17] https://admissions.vanderbilt.edu/life/.

[18] *Id.*

93. Other opportunities include leadership development, student government, work study, counseling, wellness centers, outdoor recreation, Greek Life, and student-run organizations.[19]

94. A contract was formed between Plaintiff and the Class Members and Defendants; either an express contract or a contract implied in law or in fact.

95. In addition to a written enrollment contract or contracts derived from statements in the handbook, welcome materials, policies, brochures, catalogs, advertisements, and other promotional materials, an implied contract exists between the parties.

96. Plaintiff and the Class Members have fulfilled all expectations, having paid Defendant for all Spring 2020 term financial assessments.

97. However, Defendant has breached such contracts, failed to provide those services, and/or has not otherwise performed as required by the contract between Plaintiff and the Class Members and Defendant. Defendant moved all classes to online classes, restricted or eliminated Plaintiff and the Class Members' ability to access university facilities, and/or evicted Plaintiff and the Class Members from campus housing. In doing so, Defendant deprived Plaintiff and the Class Members from the benefit of their bargain with Defendant.

98. Defendant breached the implied covenant of good faith and fair dealing with Plaintiff and the Class Members by moving all classes to online classes, restricting or eliminating Plaintiff's and the Class Members' ability to access university facilities and/or evicting Plaintiff and the Class Members from campus housing for the remainder of the Spring 2020 semester.

99. Irrespective of the loss in value between an in-person class and campus experience versus online only education, Defendant Vanderbilt cancelled classes for four days—from the

---

[19] *Id.*

evening of March 9 until March 16, 2020—in order to move classes online. The missed classes were not rescheduled. Plaintiff and the Class Members lost the value of four days of classes and were damaged as a result.

100.     Plaintiff and the Class Members have been damaged as a direct and proximate result of Defendant's breach.

101.     Plaintiff and the Class Members are entitled to damages, including but not limited to tuition refunds, fee refunds, and room and board refunds.

## COUNT II
## UNJUST ENRICHMENT

102.     Plaintiff restates and re-alleges, and incorporates herein by reference, the preceding paragraphs ¶¶ 1–73 as if fully set forth herein.

103.     In the alternative, if no express contract was formed, Defendant was unjustly enriched because at all times relevant hereto, Plaintiff and the Class Members directly conferred non-gratuitous benefits upon Defendant, *i.e.*, monetary payments for tuition, fees, and/or room and board, so that Plaintiff and the Class Members could avail themselves of in-person instruction, access to Defendant's facilities, and housing services.

104.     To the extent Defendants contend that their publications permit them to unilaterally and without notice change the terms under which Plaintiffs and Class members were to receive instruction, from in-person to online, the promises made by Defendants to Plaintiffs and Class Members to provide in-person instruction, access to Defendant's facilities, and housing services were illusory and no contract exists between the parties.

105.     Defendant knowingly accepted the benefits conferred upon it by Plaintiff and the Class Members.

-22-

106. Defendant appreciated or knew of the non-gratuitous benefits conferred upon it by Plaintiff and members of the Class for in-person instruction, access to Defendant's facilities, and housing services

107. Defendant accepted or retained the non-gratuitous benefits conferred by Plaintiff and members of the Class with full knowledge and awareness that it would be unjust and inequitable to retain the benefit provided by Plaintiff and Class Members for in-person instruction, access to Defendant's facilities, and housing services, because Defendant moved all classes online, restricted or eliminated Plaintiff's and Class Members' ability to access university facilities, and/or evicted Plaintiff and the Class Members from campus housing.

108. Due to Defendant's unjust and inequitable actions, Plaintiff and members of the Class are entitled to refunds for tuition, fees, and/or room and board.

109. Defendant knew students enrolled and paid Defendant non-gratuitous benefits for a comprehensive academic experience, including in-person classes, opportunities to network with students and professors in-person, access to campus buildings and dormitories, and to avail themselves of school programs and events.

110. However, Defendant provided Plaintiff and Class Members something far less comprehensive: a limited online experience presented by Google or Zoom, void of face-to-face faculty and peer interaction, separated from program resources, and barred from facilities vital to study.

111. Although Defendant sent students home, closed its residence halls, and offered an academic experience that was subpar in every respect, Defendant knowingly, inequitably, and unjustly retained the non-gratuitous benefit of millions of dollars from students in the form of tuition, fees, and room and board payments as if nothing had changed.

112.     Retaining the non-gratuitous benefits conferred upon Defendant by Plaintiff and members of the Class under these circumstances made Defendant's retention of the non-gratuitous benefits unjust and inequitable.

113.     Because Defendant's retention of the non-gratuitous benefits conferred by Plaintiff and members of the Class is unjust and inequitable, Plaintiff and members of the Class are entitled to, and seek disgorgement and restitution of, the benefits unjustly retained, whether in whole or in part, including through refunds for tuition, fees, and/or room and board.

**COUNT III**
**CONVERSION**

114.     Plaintiff restates and re-alleges, and incorporates herein by reference, the preceding paragraphs as if fully set forth herein.

115.     Plaintiff and the members of the Class had an undisputed right to receive in-person educational services, activities, and access to Defendant's facilities for the Spring 2020 term. Plaintiff and the Class Members obtained such rights by paying Defendant tuition, fees, and room and board and by otherwise remaining in good standing with Defendant. Defendant wrongfully exercised control over and/or intentionally interfered with the rights of Plaintiff and members of the Class by effectively closing its campus to in-person education and switching to an online-only format, discontinuing paid-for services, and evicting students from campus housing. All the while, Defendant has unlawfully retained the monies Plaintiff and the Class Members paid as well as barred Plaintiff and members of the Class from Defendant's facilities.

116.     Defendant's interference was in defiance of Plaintiff's and Class Members' rights to in-person instruction, access to Defendant's facilities, and housing services that they obtained by paying Defendant tuition, fees, and room and board.

-24-

117.    Defendant improperly exercised control over the millions of dollars from students in the form of tuition, fees, and room and board payments inconsistent with Plaintiff's and Class Members' right to a comprehensive academic experience, including in-person classes, opportunities to network with students and professors in-person, access to campus buildings and dormitories, and to avail themselves of school programs and events.

118.    The monies Plaintiff and Class Members paid Defendant for tuition, fees and room and board are specifically identifiable: $25,400.00 for tuition, $2,933.00 for a first year meal plan, $5,522.00 for housing for a total of $34,490.00, annual fees including $836.00 for a first year experience fee, $1,270.00 for student services fees, and a $100.00 transcript fee.

119.    The monies Plaintiff and Class Members paid Defendant for tuition, fees and room and board were for the certain purpose of in-person instruction, access to Defendant's facilities, and housing services.

120.    Defendant was entrusted to apply the specific funds paid for tuition, fees, and room and board for the certain purpose of providing in-person instruction, access to Defendant's facilities, and housing services.

121.    Instead, Defendant moved all classes online, restricted or eliminated Plaintiff's and Class Members' ability to access university facilities, and/or evicted Plaintiff and the Class Members from campus housing.

122.    Defendant wrongfully appropriated the funds Plaintiff and Class Members paid for in-person instruction, access to Defendant's facilities, and housing services for its own use and benefit.

123.    Defendant deprived Plaintiff and Class Members of the rights and benefits for which they paid Defendant tuition, fees, and/or room and board.

124.    Plaintiff and/or Class Members have requested and/or demanded that Defendant issue refunds.

125.    Defendant's interference with the rights and services for which Plaintiff and members of the Class paid damaged Plaintiff and Class Members, in that they paid for rights, benefits, services, and/or facility access, but Defendant deprived Plaintiff and Class Members of their rights, benefits, services, and/or facility access.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and Class Members request that the Court enter an order or judgment against Defendant including:

A.      Certification of the action as a Class Action under Rules 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure, and appointment of Plaintiff as Class Representative and his counsel of record as Class Counsel;

B.      Damages in the amount of unrefunded tuition, fees, and/or room and board;

C.      Actual damages and all such other relief as provided under the law;

D.      Pre-judgment and post-judgment interest on such monetary relief;

E.      Other appropriate injunctive relief as permitted by law or equity, including an order enjoining Defendant from retaining refunds for tuition, fees, and/or room and board;

F.      The costs of bringing this suit, including reasonable attorney's fees; and

G.      All other relief to which Plaintiff and members of the Class may be entitled by law or in equity.

## JURY DEMAND

Plaintiff demands trial by jury on his own behalf and on behalf of Class Members.

Dated: July 13, 2020                              Respectfully submitted,

By: */s/ Tricia Herzfeld*
Tricia Herzfeld (BPR #26014)
Anthony A. Orlandi (BPR #33988)
BRANSTETTER, STRANCH & JENNINGS, PLLC
223 Rosa L. Parks Ave., Suite 200
Nashville, TN 37203
Ph: 615-254-8801
Fax: 615-255-5419
triciah@bsjfirm.com
aorlandi@bsjfirm.com

Steve W. Berman (*Pro Hac Vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
(206) 623-7292
steve@hbsslaw.com

Daniel J. Kurowski (*Pro Hac Vice*)
Whitney K. Siehl (*Pro Hac Vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
455 N. Cityfront Plaza Dr., Suite 2410
Chicago, IL 60611
(708) 628-4949
dank@hbsslaw.com
whitneys@hbsslaw.com

*Attorneys for Plaintiff, individually and on behalf of
all others similarly situated*

-27-

<u>**CERTIFICATE OF SERVICE**</u>

   I hereby certify that on this 13th day of July, 2020, I electronically filed the following document with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filings to the following:


Alan E. Schoenfeld
Wilmer, Cutler & Pickering Hale and Dorr LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 937-7294
Email: alan.schoenfeld@wilmerhale.com

Bruce M. Berman
Wilmer, Cutler & Pickering Hale and Dorr LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
(202) 663-6000
Fax: (202) 663-6363
Email: bruce.berman@wilmerhale.com

Kevin C. Klein
Ryan P. Loofbourrow
Klein Solomon, PLLC
1322 4th Avenue North
Nashville, TN 37208
(615) 600-4780
Fax: (615) 600-4780
Email: kevin.klein@kleinpllc.com
Email: ryan.loofbourrow@kleinpllc.com


          */s/ Tricia Herzfeld*
          Tricia Herzfeld