# Exhibit 6

| | | | |
|---|---|---|---|
| Case No.: | 2:20-cv-04668-SB (JEMx) | Date: | January 8, 2021 |

| | |
|---|---|
| Title: | *Bridget McCarthy v. Loyola Marymount University* |

| Present: The Honorable | STANLEY BLUMENFELD, JR., U.S. District Judge |
|---|---|
| Victor Cruz | Katie Thibodeaux |
| Deputy Clerk | Court Reporter |
| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
| Roy T. Willey, IV | Vito A. Costanzo |

**Proceedings:** **DENYING DEFENDANT'S MOTION TO DISMISS (DKT. NO. 29)**

Before the Court is the Motion to Dismiss filed by Defendant Loyola Marymount University ("Defendant" or "LMU"). (Mot., Dkt. No. 29.) Plaintiff Bridget McCarthy opposes. (Opp., Dkt. No. 37.) Defendant has replied. (Reply, Dkt. No. 39.) For the following reasons, the Court **DENIES** the Motion.

I. **BACKGROUND**

A. **Factual Background**

Plaintiff is an undergraduate student at LMU who was enrolled for the Spring 2020 academic semester. (First Amended Complaint ("FAC") ¶¶ 13, 18, Dkt. No. 27.) The spring term was scheduled to begin on January 13, 2020 and conclude on May 10, 2020. (*Id.* ¶¶ 31-32.) Plaintiff chose to attend LMU based on its marketing of the benefits of its "on-campus experience." (*Id.* ¶¶ 22-25; 73-88.) The terms of Plaintiff's contractual agreement with Defendant are set forth in its "website, academic catalogs, student handbooks, marketing materials and other

circulars, bulletins, publications, and course of dealing." (*Id.* ¶ 71.) Defendant's bulletin, among other things, states:

> The University Bulletin is not an offer to enter into a contract. Loyola Marymount University reserves the right to make changes to degree program requirements, academic and administrative policies and regulations, financial charges, and course offerings published in the University Bulletin at any time without prior notice.

(Defendant's Request for Judicial Notice ("RJN"), ¶ 1, Dkt. No. 32; Declaration of Dr. Thomas Poon ("Poon Decl."), ¶ 4, Ex. A, Dkt. No. 30-1.)[1]

On March 13, 2020, in the middle of the semester, Defendant announced that it would be moving all classes online for the remainder of the semester in response to the ongoing COVID-19 pandemic. (FAC ¶ 35.) Defendant also closed on-campus housing on March 22, 2020. (*Id.* ¶ 36.)

After Defendant's decisions, students began demanding prorated refunds for tuition and fees. (*Id.* ¶ 38.) On or about April 2, 2020, Defendant announced that it would not issue refunds for tuition but would refund student housing prorated from March 22, 2020. (*Id.* ¶ 41.) Defendant also stated it would issue partial refunds for parking and recreation fees but did not address refunds for other fees such as the student activity fee. (*Id.*) Defendant did not explain the calculation of these refunds. (*Id.* ¶ 42.)

By moving instruction exclusively online, Defendant allegedly has deprived Plaintiff of the benefits of on-campus instruction for which she contracted. (*Id.* ¶ 49.) Plaintiff likewise alleges deprivation of access to facilities that "are integral to the college experience . . . social development and independence, and networking for future careers. . . ." (*Id.* ¶ 50.)

### B. Procedural History

Plaintiff, on behalf of herself and all students who paid tuition and fees during the Spring 2020 semester, filed her initial complaint on May 26, 2020, alleging four claims for relief for (1) breach of contract for failure to reimburse

---

[1] Plaintiff's FAC incorporates the LMU Bulletin by reference. Defendant's RJN as to Exhibit A of the Poon Declaration is **GRANTED**. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

tuition; (2) unjust enrichment for failure to reimburse tuition; (3) breach of contract for failure to reimburse fees; and (4) unjust enrichment for failure to reimburse fees. (Compl., Dkt. No. 1.) Defendant moved to dismiss Plaintiff's complaint on October 9, 2020 (Dkt. No. 22); and instead of opposing, Plaintiff filed her FAC on October 22, 2020 alleging the same four claims for relief. (FAC, Dkt. No. 27.) On November 5, 2020, Defendant filed the instant motion.

## II.  LEGAL STANDARD

Under Rule 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted. A plaintiff must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has "facial plausibility" if the plaintiff pleads facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In resolving a Rule 12(b)(6), a court must accept all well-pleaded factual allegations as true, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. That is, a pleading must set forth allegations that have "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Courts "'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). Assuming the veracity of well-pleaded factual allegations, a court next must "determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. There is no plausibility "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Id.*

## III.  DISCUSSION

Defendant argues that Plaintiff's FAC should be dismissed for three reasons. First, it argues that Plaintiff's claims are fundamentally nonactionable claims for educational malpractice. (Mot. at 8.) Second, Defendant argues that even if Plaintiff's claims are not barred by the educational malpractice doctrine, she fails to state a claim. (*Id.* at 12, 19.) Third, Defendant argues that Plaintiff's demands for damages are impermissibly speculative. (*Id.* at 21.) Defendant also moves to dismiss Plaintiff's demands for declaratory and injunctive relief. (*Id.* at 23.)

## A. The Educational Malpractice Doctrine Does Not Apply.

Defendant argues that Plaintiff's claims hinge on the premise that Defendant failed to provide her and other students with the type and quality of education that was promised to them after the shift to online learning due to the pandemic. (*See generally* Mot. at 8-12.) As such, Defendant argues that Plaintiff's claims are barred by the educational malpractice doctrine.

"The basic legal relationship between a student and a private university or college is contractual in nature." *Zumbrun v. Univ. of S. California*, 25 Cal. App. 3d 1, 10 (1972). However, "[t]here is a widely accepted rule of judicial non-intervention into the academic affairs of schools." *Paulsen v. Golden Gate Univ.*, 25 Cal. 3d 803, 808 (1979) (collecting cases). Courts may only overturn a university's decision if it is "arbitrary and capricious, not based upon academic criteria, and the result of irrelevant or discriminatory factors." *Banks v. Dominican Coll.*, 35 Cal. App. 4th 1545, 1551 (1995) (citing *Paulsen*, 25 Cal. 3d at 808-09). While a university retains the flexibility to alter the relationship with its students, this rule of flexibility does not apply to specific educational promises. *Kashmiri v. Regents of Univ. of California*, 156 Cal. App. 4th 809, 826 (2007) ("Courts have, however, not been hesitant to apply contract law when the educational institution makes a specific promise to provide an educational service, such as a failure to offer any classes or a failure to deliver a promised number of hours of instruction.").

Plaintiff argues that she does not contest the adequacy of her education but instead alleges that Defendant breached a specific promise—the promise to provide an in-person education. (*See generally* Opp. at 3-8.) Much like the court in *Saroya v. Univ. of the Pac.*, this Court "does not read Plaintiff's FAC as alleging a failure of the university to provide [her] with an education of a certain quality." No. 5:20-cv-03196-EJD, 2020 WL 7013598, at *4-5 (N.D. Cal. Nov. 27, 2020). Indeed, as in *Saroya*, Plaintiff alleges that she contracted for—but did not receive—"in-person educational services, experiences, opportunities, and other related services." (Opp. at 7 (citing FAC ¶¶ 70, 134).)[2] Defendant argues that this

---

[2] The vast majority of federal courts confronted with the same issue also conclude that similar claims do not implicate the educational malpractice doctrine. *See, e.g.*, *Saroya*, 2020 WL 7013598, at *4-5 (declining to apply educational malpractice doctrine); *Ford v. Rensselaer Polytechnic Inst.*, No. 1:20-CV-470, 2020 WL 7389155, at *5-6 (N.D.N.Y. Dec. 16, 2020) (same); *Bahrani v. Northeastern Univ.*, No. CV 20-10946-RGS, 2020 WL 7774292, at *2 n. 1 (D. Mass. Dec. 30, 2020)

shift in the "mode of instruction" falls exclusively within its professional judgment, and that Plaintiff's claims necessarily require a judicial determination that an online education is worth less than one received in person. (Mot. at 10.)

Defendant interprets the educational malpractice doctrine too broadly. Not all decisions made by a university are pedagogical in nature. The doctrine does not foreclose a breach of contract claim if it "would not require an inquiry into the nuances of educational processes and theories, but rather an objective assessment [of the University's performance of its promise]." *Kashmiri*, 156 Cal. App. 4th 809, 826 (2007) (quotation and citation omitted); *see also Zumbrun*, 25 Cal. App. 3d at 10-11. *Zumbrun* and *Kashmiri* are instructive. In *Zumbrun*, a student from the University of Southern California (USC) sued the school for not receiving the number of lectures and the type of final examination promised because of a faculty strike. 25 Cal. App. 3d at 10. On appeal, the court allowed the contract claim to proceed, concluding that "whether the partial failure of consideration . . . justifies refund of a portion of the tuition and fee allocable to the course is a matter of proof" at trial. *Id.* at 11. In *Kashmiri*, students sued their university for raising tuition despite a promise not to do so. 156 Cal. App. 4th at 815. The court held that the promise constituted an enforceable implied contract and did not implicate the educational malpractice doctrine. *Id.* at 826-28.

The question here is whether Defendant made a specific promise to provide in-person instruction for the duration of Plaintiff's semester. Much like the promises in *Zumbrun* and *Kashmiri*, the purported promise in this case does not involve an academic decision outside the realm of judicial determination. The doctrine of educational malpractice exists to avoid judicial interference with academic affairs. *Kashmiri*, 156 Cal. App. 4th at 825. Here, the decision to

---

(same); *Chong v. Northeastern Univ.*, No. CV 20-10844-RGS, 2020 WL 7338499, at *2 n. 1 (D. Mass. Dec. 14, 2020) (same); *Gibson v. Lynn Univ.*, No. 20-CIV-81173-RAR, 2020 WL 7024463, at *4 (S.D. Fla. Nov. 29, 2020) (same); *Salerno v. Fla. S. Coll.*, No. 8:20-cv-1494-30SPF, 2020 WL 5583522, at *5 (M.D. Fla. Sept. 16, 2020) (same). Defendant relies heavily on a case reaching the opposite conclusion, *Lindner v. Occidental Coll.*, No. CV 20-8481-JFW (RAOx), 2020 WL 7350212, at *6-7 (C.D. Cal. Dec. 11, 2020). *Lindner*, however, contained a contract provision not found in this case that reserved for the college "the right to change fees, modify its services, or change its program should economic conditions or national emergency make it necessary to do so." *Id.* at *8. In light of this express contract right (which defeated the contract claims), the discussion about the educational malpractice doctrine in that case appears to be dicta.

suddenly shift to online education can hardly be characterized as an "academic decision" within the meaning of that doctrine. Indeed, the decision to cease in-person instruction involved no judgment, much less an academic one, because Defendant was mandated by government orders to do so. (Mot. at 11.) In this circumstance, the Court does not find that the educational malpractice doctrine bars Plaintiff's claims.

### B. Plaintiff States a Claim for Breach of Contract.

The real issue raised in the motion is whether Plaintiff has stated a claim for breach of contract. Under California law, the elements of breach of contract are: "(1) the existence of a contract, (2) plaintiff's performance or excuse for nonperformance, defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011). Defendant argues that Plaintiff's contract claims fail for four reasons, discussed below.

#### 1. Plaintiff Has Sufficiently Identified a Promise to Provide In-Person Instruction.

Defendant first argues that Plaintiff's contract claims fail because she has failed to identify a discrete, specific promise that she would be provided in-person education and access to on-campus facilities. Instead, Defendant contends that Plaintiff has merely identified a vague general promise that cannot support a claim. (Mot. at 13.) Drawing all inferences in Plaintiff's favor, the Court disagrees.

Plaintiff identifies a number of promises made by Defendant that tout the benefits of its in-person teaching and on-campus experience, such as: "Face-to-face interaction with professors, mentors, and peers;" "Access to facilities such as computer labs, study rooms, laboratories, etc.;" "Extra-curricular activities, groups, intramural sports, etc.;" and "Hands-on learning and experimentation." (FAC ¶ 25.) Indeed, Defendant's publications refer to benefits of its "comprehensive, on-campus educational experience." (*See id.* ¶¶ 76-87.) Read in the manner most favorable to Plaintiff, "[t]hese allegations clearly extend beyond coursework and to the entirety of the educational experience." *Bergeron v. Rochester Inst. of Tech.*, No. 20-CV-6283 (CJS), 2020 WL 7486682, at *7-8 (W.D.N.Y. Dec. 18, 2020) (finding similar representations "sufficiently specific" to withstand a motion to dismiss); *see also Ford*, 2020 WL 7389155 at *4 (finding school's publications describing on-campus learning experience as "integral" adequately pleaded). As another court recognized, "this is not a typical contract situation where there is an

express document with delineated terms that a plaintiff can reference." *Salerno*, 2020 WL 5583522 at *5.

These allegations, moreover, must be taken in the specific context of this case. This is not a case in which Defendant opted to switch to online learning before classes began. Rather, the semester was well underway with class instruction inside a classroom with students appearing before an instructor. Plaintiff already had signed up for this instruction, and she was in the midst of the instruction for which she reasonably assumed she had bargained. At a minimum, Plaintiff's allegations are sufficient to establish an implied contract.

### 2. Defendant's Refund Policy is Inapposite.

Defendant next asserts that its tuition refund policy precludes a breach of contract claim because it governs how and when a student may obtain a refund. In accordance with the LMU Bulletin, students may only receive refunds before a certain period in the semester. Under this policy, if a student elects to withdraw for any reason such as illness, employment relocation, or other emergencies, they are entitled to a refund based on a sliding scale. (Mot. at 16.) Defendant announced its conversion to online instruction the last day to receive a partial (25%) refund. (Opp. at 14.)

The refund policy appears inapplicable. By its terms, the policy contemplates a student's withdrawal rather than Defendant's modification or cancellation. *See Bergeron*, 2020 WL 7486682 at 7 (finding school's refund or withdrawal policies irrelevant). Plaintiff is not alleging that she sought to withdraw and was denied a refund; rather, she contends that Defendant had no contractual right to cancel in-person instruction and require the same tuition payment for online instruction without an option for a full refund. (Opp. at 14-15.)

In short, the plain language of the refund policy precludes its application to Defendant's decision here. The policy does not address the consequences of Defendant's decision to cancel or modify instruction contrary to its promise. Were the policy to be read otherwise, it would have allowed Defendant to cancel in-person instruction—or indeed to cancel classes altogether—one day later for no refund at all. This is not what the policy states, and the Court will not remake it to say so.

### 3. The Right to Modify

Defendant next argues that it reserved the right to unilaterally modify its curriculum in the LMU Bulletin. In relevant part, the bulletin states, "[Defendant] reserves the right to make changes to degree program requirements, academic and administrative polices and regulations, financial charges, and course offerings published in the University Bulletin at any time without prior notice." (Mot. at 4, 17 (quoting Defendant's RJN, ¶ 1; Poon Decl., ¶ 4, Ex. A).)

From this general disclaimer, Defendant asserts that it has a broad right to change it programs and policies. Defendant purports to exercise this discretion in modest fashion by changing "the mode of instruction." (Mot. at 17.) But this shift to online learning is anything but modest—the promise of learning in a dynamic classroom on a bustling and thriving campus full of amenities and planned and spontaneous human encounters is not delivered by looking at a computer screen at home. *See Bergeron*, 2020 WL 7486682 at *6-7 (rejecting similar disclaimer argument); *see also Saroya*, 2020 WL 7013598 at *6 (same). Defendant has not demonstrated that the general reservation of rights reaches this far.

### 4. Plaintiff Adequately Alleges Causation.

Defendant finally argues that Plaintiff's breach of contract claims fail because she has admitted that it was the COVID-19 pandemic that caused her alleged harm, not Defendant. (Mot. at 18-19.) This argument misses the mark.

The pandemic has wreaked havoc on the world. It is the cause of much misery and much disruption. To acknowledge this sad but obvious fact is not to eliminate liability for all harmful human acts or omissions in response to the pandemic. Here, the pandemic set off a chain of events that led to Defendant's decision to cancel in-person instruction, convert to online instruction, and require students to participate or lose all but 25% of their tuition upon immediate withdrawal. Plaintiff's lawsuit challenges Defendant's decisions in response to the pandemic and alleges that those decisions, not COVID-19, caused the breach of contract. (FAC ¶¶ 106, 137.)[3]

---

[3] Whether Defendant has an excuse for nonperformance is another matter—one not raised or properly before the Court at this point. *See* Cal. Civ. Code § 1511 ("The want of performance of an obligation, or of an offer of performance, in whole or in

### C. Plaintiff May Plead Unjust Enrichment in the Alternative.[4]

Under California law, "there is not a standalone cause of for 'unjust enrichment,' which is synonymous with 'restitution.'" *Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (citations omitted). The theory underlying unjust enrichment and restitution is "that a defendant has been unjustly conferred a benefit 'through mistake, fraud, coercion, or request.'" *Id.* (citation omitted). Courts construe a claim seeking the return of that benefit "as a quasi-contract claim seeking restitution." *Id.* However, no such cause of action can coexist with an express contract covering the same subject matter. *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221, 231 (2014).

Defendant argues that there is an express contract—the refund policy—that bars Plaintiff's claims for unjust enrichment. (Mot. at 20-21.) For the reasons already discussed, Defendant's refund policy is inapplicable to Plaintiff's claims. Moreover, to the extent that Defendant disclaims the existence of any enforceable contract, Plaintiff is allowed to plead alternative theories of relief at this stage under Rule 8(d)(2). *See Chong*, 2020 WL 7338499 at *4; *Salerno*, 2020 WL 5583522 at *5; *Ford*, 2020 WL 7389255 at *8-9; *Bergeron*, 2020 WL 7486682 at *9.

### D. Plaintiff's Damages are not Impermissibly Speculative.

Defendant contends that Plaintiff cannot seek recovery on a contract claim for the difference in value between online and in-person learning because any such damage theory is impermissibly speculative. (Mot. at 21.) Perhaps. But Defendant has not demonstrated that Plaintiff is only pursuing its expectancy interest in the benefit of the bargain.

A party's expectancy interest is the most common form of relief recovered in a claim for breach of contract. Restatement (Second) of Contracts § 347 (1981); *see Overgaard v. Johnson*, 68 Cal. App. 3d 821, 823 (1977) ("'Benefit of the

---

part . . . is excused . . . [w]hen it is prevented or delayed by an irresistible, superhuman cause . . . .").

[4] Even if Plaintiff was precluded from seeking restitution as a separate claim, Defendant cites no authority that precludes Plaintiff from seeking restitution as a measure of damages for breach of contract. *See* discussion *infra*.

bargain' is the difference between the actual value of what plaintiff has received and that which he expected to receive."). And Defendant may well be correct that the pursuit of the expectancy interest in this case will run up against the basic principle that consequential damages must be proven with "reasonable certainty." *Grupe v. Glick*, 26 Cal. 2d 680, 691-92 (1945); *see also Sargon Enterprises, Inc. v. Univ. of S. California*, 55 Cal. 4th 747, 774 (2012).

But there are other interests that may be protected against a breach of contract, including reliance and restitutionary interests. *See* Restatement (Second) of Contracts § 344 (1981) (defining the three interests protected by remedies for contract breaches). Reliance damages generally allow recovery for costs incurred in reliance on contract performance. Restatement (Second) of Contracts § 349 (1981) ("As an alternative to the [expectancy] measure of damages . . . , the injured party has a right to damages based on his reliance interest, including expenditures made in preparation for performance or in performance, less any loss that the party in breach can prove with reasonable certainty the injured party would have suffered had the contract been performed."); *see Agam v. Gavra*, 236 Cal. App. 4th 91, 107 (2015) (describing reliance damage principles). But such damages are subject to limitations, and one constraint is that the non-breaching party should not better off because of the breach (i.e., placed "in a better position than he would have occupied had the contract been fully performed") (internal quotation and citation omitted). The limitations may preclude reliance damages in this case, but Plaintiff does not seem to be pursuing this theory.

However, Plaintiff is potentially seeking the third measure of damages, asserting a right to restitution. *See* Restatement (Second) of Contracts § 373 (1981) (stating that "the injured party is entitled to restitution for any benefit that he has conferred on the other party by way of part performance or reliance"). In the FAC, Plaintiff alleges that by shifting classes online and closing campus, "Defendant saved significant amounts of money" in reduced utility and maintenance costs and employee and staffing costs. (FAC ¶ 123.) While Defendant strenuously denies this allegation, Plaintiff's factual assertions must be credited for the purposes of this motion.

In the end, the claim for contract damages in this case may prove to be an insuperable obstacle as a matter of fact or as a matter of law. The Court cannot say. All that can be said at this point is that it is too soon to tell.[5]

---

[5] Defendant also challenges the propriety of the prayer for injunctive and declaratory relief for "past wrongs" in the spring 2020 semester. (Mot. at 23.)

## IV. **CONCLUSION**

For the foregoing reasons, the Court **DENIES** Defendant's Motion. Defendant must answer by January 22, 2021.

0/14

---

This challenge is denied as "premature." *See Friends of Frederick Seig Grove #94 v. Sonoma Cty. Water Agency*, 124 F. Supp. 2d 1161, 1172 (N.D. Cal. 2000).