# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANDREA GOCIMAN, SIMON PFEIFER, ISABEL BOTELLO, JOSEPH HICKEY, and KARI WHALEN, individually and on behalf of all others similarly situated, ) ) ) ) ) | |
| Plaintiffs, ) | Case No. 20 C 3116 |
| ) | Judge Robert W. Gettleman |
| v. ) ) | |
| LOYOLA UNIVERSITY OF CHICAGO, ) ) | |
| Defendants. ) | |

## MEMORANDUM OPINION & ORDER

Plaintiffs Andrea Gociman, Simon Pfeifer, Isabel Botello, Joseph Hickey, and Kari Whalen bring a two count first amended complaint ("FAC"), on behalf of themselves and all others similarly situated, alleging breach of contract and unjust enrichment against defendant Loyola University of Chicago ("Loyola"). Defendant has moved to dismiss pursuant to Rule 12(b)(6) and Rule 12(b)(1) of the Federal Rules of Civil Procedure. (Doc. 21). For the reasons stated below, the motion is granted.

## BACKGROUND

Plaintiffs Simon Pfiefer, Isabel Botello, and Kari Whalen are undergraduate students who contracted with defendant for classes during the Spring 2020 semester. Plaintiffs Gociman and Hickey are parents of two undergraduate students. Defendant is a university in Chicago, Illinois. Plaintiffs allege that they paid all required tuition and fees to defendant for the Spring 2020 semester.

1

Defendant gives students the option of enrolling in an in-person, traditional college experience or an online program. Defendant charges its in-person undergraduate students $22,065 in tuition for the Spring 2020 semester, or between $1,050 and $1,838 per credit hour. In-person students are also charged an array of fees, including a student development fee, a technology fee, and a bus pass fee.[1] Defendant charges students in the online program $693 per credit hour, does not require online students to pay for a bus pass, and charges less than in-person students for the other fees.

Defendant's Spring 2020 semester began on January 13, 2020. Approximately two months into the semester, on March 9, 2020, Illinois Governor J.B. Pritzker issued a disaster proclamation in response to the growing number of COVID-19 cases in Illinois. That same day, defendant advised faculty that courses would begin moving online. Two days later, the World Health Organization declared COVID-19 a global pandemic, and the following day, defendant suspended all in-person classes and moved to an online format. Defendant encouraged residential students to complete their online coursework from home, and on March 19, 2020, defendant officially closed residence halls and campus buildings.

Plaintiffs allege that defendant's website, brochures, course catalogues, and online registration portal establish a contractual promise to provide in-person instruction and access to facilities and resources. For example, the course catalogue includes parenthetical notations next to course descriptions such as, "lecture (in-person)." However, the course catalogue also states that it is "published for informational purposes," "is not a contract," and that defendant "reserves the right to change, at any time, without notice…curriculum, course structure and content….notwithstanding any information set forth in this catalog."

---

[1] The FAC states that defendant provided a partial refund for the student development fee and, for the fall semester, defendant is not charging the student development fee at all.

According to plaintiffs, without questioning the wisdom or necessity behind defendant's decision to move courses online for the Spring 2020 semester, that decision deprived them of in-person instruction and access to campus facilities, events, and resources that they were promised. Plaintiffs further claim that the online education was "worth significantly less than the value of live classes." They bring claims on behalf of themselves and "all person who paid, on behalf of themselves or another, tuition or fees for on-campus programs at Loyola University of Chicago for the Spring 2020 semester." Plaintiffs seek damages representing the difference in value between in-person classes and access to facilities, and the online education they received.

## DISCUSSION

Defendant moves to dismiss Gociman and Hickey for lack of standing under Rule 12(b)(1), and Counts I and II for failure to state a claim under Rule 12(b)(6). The Court will discuss each argument in turn.

**1) Standing**

Defendant argues that, as parents of adult students, Gociman and Hickey lack standing to pursue claims against defendant. The Supreme Court has established that the "irreducible constitutional minimum" of Article III standing consists of three elements: "[t]he plaintiff must have (1) suffered an injury in fact; (2) that is fairly traceable to the challenged conduct of the defendant; and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 136 S.Ct. 1540, 1547, as revised (May 24, 2016) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-561 (1992)). Here, defendant challenges the first element. Plaintiffs provide no arguments in response, other than stating in a footnote that Gociman and Hickey's standing "has no bearing on the motion to dismiss."

"Once a student reaches the age of majority, courts have routinely held that parents lack standing to bring claims against their adult children's colleges and universities, even when the parents pay tuition on behalf of their children." Lindner v. Occidental Coll., 2020 WL 7350212, at *5 (C.D. Ca. Dec. 11, 2020); see also, Salerno v. Fla. S. Coll., 2020 WL 5583522, at *3-4 (M.D. Fla. Sept. 16, 2020) (dismissing mother's claim for lack of standing when mother sued the student's college for breach of contract after the college moved to online learning during the Covid-19 pandemic); Bergeron v. Rochester Institute of Techn., 2020 WL 7486682, at *3 (W.D.N.Y. Dec. 18 2020) (same).

In the instant case, because both Gociman and Hickey do not allege that their children are minors, they cannot sue on their child's behalf. Neither do Gociman or Hickey allege that they entered into a contract with defendant, or that they are an intended third-party beneficiary. Instead, they allege only that they paid the tuition and fees so their children could enroll as undergraduate students. See Salerno, 2020 WL 5583522, at *4 ("It is also of note that the lack of injury to [the mother] is clear regardless of whether [the mother] provided financial support to her daughter."); Doe v. Univ. of the South, 687 F.Supp.2d 744, 761 (E.D. Tenn. 2009) ("It is fairly evident that the 'payment of tuition does not create contractual relationship between parents and a college' when the parents' child is over the age of majority.").

The court finds that Gociman and Hickey's allegations are insufficient to meet their burden of showing injury-in-fact. Consequently, Gociman and Hickey are dismissed from the suit for lack of standing.

**2) Failure to State a Claim**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." Bell. Atl. Corp. v. Twombly, 550 U.S. 554, 570 (2007). "A

claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). That said, when considering a motion to dismiss, the court accepts "all well-pleaded factual allegations as true and view[s] them in the light most favorable to plaintiff." Lavalais v. Vill. of Melrose Park, 734 F.3d 629, 632 (7th Cir. 2013). At the same time, "allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion." McReynolds v. Merrill Lynch & Co., Inc., 694 F.3d 873, 885 (7th Cir. 2012) (citing Iqbal, 556 U.S. at 678).

### a) Breach of Contract (Count I)

Defendant first argues that plaintiffs' claims must be dismissed because they amount to allegations of educational malpractice that are not cognizable under Illinois law. Courts in Illinois and across the country have repeatedly rejected claims that seek damages for allegedly subpar education, or "educational malpractice" claims, whether they sound in contract or tort. Waugh v. Morgan Stanley $ Co., 2012 IL App (1st) 102653; Bissessur v. Ind. Univ. Bd. of Trs., 581 F.3d 599, 602 (7th Cir. 2009); Ross v. Creighton Univ., 957 F.2d 410, 416 (7th Cir. 1992) (following the "great weight of authority…bar[ring] any attempt to repackage an educational malpractice claim as a contract claim"). Regardless of how the claim is pled, courts will not "second-guess" the "professional judgment" of the university. Ross, 957 F.2d at 416. "[C]ourts have concluded that 'the adequacy of teachers and teaching methods are matters entrusted to educators and institutions that regulate them, not to judges and juries.'" Linder, 2020 WL 7350212, at * 7 (citing Jamieson v. Vatterott Educ. Ctrs., Inc., 259 F.R.D. 520, 540 (D. Kan. 2009)); see also Bd. of Curators of Univ. of Mo. v. Horowitz, 435 U.S. 78, 96 n. 6 (1978) ("University facilities must have the widest range of discretion in making judgments as to the

5

academic performance of students and their entitlement to promotion or graduation.") (Powell, J., concurring).

In this case, the theory underlying all of plaintiffs' claims is that the education plaintiffs received once defendant transitioned to remote instruction in response to the COVID-19 pandemic was "worth significantly less than the value of live classes." Thus, "resolution of Plaintiffs' claims would require the Court to make judgments about the quality and value of the education [defendant] provided in the Spring 2020 semester." Linder, 2020 WL 7350212, at *7; see also Ross, 957 F.2d at 414 (noting the "inherent uncertainties" in determining the "nature of damages" in educational malpractice claims and holding that the "sheer number of claims that could arise if [educational malpractice claims] were allowed might overburden schools," regardless of their merits).

Plaintiffs attempt to avoid this flaw by arguing that they are not challenging the quality of their education, but rather alleging that defendant failed to perform the educational service "at all." Plaintiffs' argument is contradicted by the text of the FAC, which states that plaintiffs received online instruction and course credits, and repeatedly claims that the online instruction was "worth less" than the traditional in-person instruction. The FAC clearly challenges the quality of the online instruction, not whether defendant provided education "at all." Consequently, the court concludes that plaintiffs' claims are the type of educational malpractice claims that Illinois courts, and courts throughout the country, have rejected. See, for example, Waugh, 2012 IL App (1st) 102653, ¶ 33.

Plaintiffs' breach of contract claim fails for a second reason: plaintiffs have failed to allege a specific promise for in-person instruction. In Illinois, a breach of contract claim requires: "(1) the existence of a valid and enforceable contract; (2) substantial performance by

the plaintiff; (3) a breach by the defendant; and (4) resultant damages." Reger Dev. v. Nat'l City Bank, 592 F.3d 759, 764 (7th Cir. 2010). To state a claim for breach of contract in an educational setting a plaintiff "must do more than simply allege that the education was not good enough. Instead, [plaintiffs] must point to an identifiable contractual promise that the defendant failed to honor." Fleming v. Chi. Sch. of Prof'l Psychology, 2019 WL 247537, at *3 (N.D. Ill. Jan. 16, 2019) (quoting Ross, 957 F.2d at 416-17). It is also insufficient "for a student to merely state that…an implied contracted existed." Bissessur, 581 F.3d at 603. "Instead, the student's complaint must be specific about the source of this implied contract, the exact promises the university made to the student, and the promises the student made in return." Charleston v. Bd. of Trs. of the Univ. of Ill., 741 F.3d 769, 773 (7th Cir. 2013).

To demonstrate such a promise, plaintiffs point to hundreds of pages of documents that describe course offerings and residential life at Loyola. For example, plaintiffs point to the residency requirement, claiming the requirement "demonstrates" that "promises of on-campus instruction and access to facilities and resources are part of the contractual agreement between [plaintiffs] and defendant." Yet, the residency requirement makes no mention of on-campus courses or in-person access to facilities. The residency requirement also provides an exemption for students not interested in the residential experience, undermining plaintiffs' claim that the on-campus experience is a necessary or guaranteed part of a students' education.[2]

Plaintiffs' next claim that the "Course Catalog made numerous statements promising students that the courses for which [they] registered would be delivered on-campus." (emphasis in original). These statements appear to be parenthetical notations following course descriptions, stating, "lecture (in-person)." The parentheticals are hardly sufficient to form a binding contract.

---

[2] The original complaint acknowledges that defendant provided a partial refund for room and board fees.

See <u>Abrams v. Ill. Coll. of Podiatric Med.</u>, 77 Ill.App.3d 471, 477 (1st Dist. 1979) (finding that the provision of the student handbook on which plaintiff based his breach of contract claim was "not communicated to the plaintiff in such a way as to invite the payment of tuition in reliance thereon," and as a result, "plaintiff did not have the power to transform [it], into a binding contractual obligation"). Further, the Course Catalogue expressly states that it is "published for informational purposes," is "not a contract," and "reserves the right to change, at any time, without notice…curriculum, course structure and content…notwithstanding any information set forth in this catalog." Plaintiffs' attempt to read into the catalogue an obligation to provide only in-person instruction is plainly inconsistent with the document itself. See <u>Linder</u>, 2020 WL 7350212, at *8 (where the college expressly reserved the right to modify its course services, plaintiffs' claim for breach of contract to provide in-person instruction due to Covid-19 failed).[3]

Plaintiffs also argue that in-person instruction was implied by the difference in tuition for the "in-person" and "online-program." They ask the court to infer that the difference in tuitions and fees reflects a guaranteed right to on-campus services and "face-to-face, live instruction." The court will not make this inference. Under the caselaw, plaintiffs are required to provide an identifiable contractual promise. See <u>Fleming</u>, 2019 WL 247537, at *3 (in an educational setting, a plaintiff "must point to an identifiable contractual promise that the defendant failed to honor"). A difference in tuition is insufficient to allege a specific contractual promise.

Finally, plaintiffs point to several cases that denied motions to dismiss for similar breach of contract claims stemming from remote education in response to the COVID-19 pandemic. Many of the identified cases come from the Ohio Court of Claims, and the others do not apply

---

[3] Additionally, under plaintiffs' theory, changing a course from a seminar to a lecture would amount to a breach of contract that could entitle a student to financial recovery. Neither contracting party could possibly have intended that result.

Illinois law. See, for example, Cross v. Univ. of Toledo, 2020 WL 472681 (Ohio Ct. Cl. July 8, 2020); Smith v. The Ohio State Univ., 2020 WL 5694224 (Ohio Ct. Cl. Sept. 9, 2020); Salerno, 2020 WL 5583522 (M.D. Fla. Sept. 16, 2020) (applying Florida law); Bergeron, 2020 WL 7486682 (W.D.N.Y. Dec. 18, 2020) (applying New York law). Other courts analyzing different promises, different states' laws, and reaching different results have little bearing on the instant case. Plaintiffs cite only one case that applies Illinois law, Doe v. Bradley University, 2020 WL 7634159 (C.D. Ill. Dec. 22, 2020). Doe did not provide a description of the complaint or the documents encompassing the alleged promise, so the court cannot determine if those claims are truly similar. In any event, there is no indication that the university in Doe expressly reserved the right to change course structure and content, and Doe's cursory reasoning does not convince this court to follow Doe's lead.

In sum, none of the materials identified by plaintiffs demonstrate a promise to provide in-person instruction and in-person services. Plaintiffs have failed to state a claim for breach of contract. The motion to dismiss is granted with prejudice as to Count I.[4]

### b) Unjust Enrichment (Count II)

To state a claim for unjust enrichment under Illinois law, a plaintiff "must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that the defendant's retention of that benefit violates fundamental principles of justice, equity, and good conscience."

---

[4] Although the court recognizes that this circuit has a liberal policy favoring amendments and that leave to amend should be freely granted, the court is not required to grant leave to amend if the court determines that leave to amend would be futile. See Runnion v. Girl Scouts of Greater Chi., 786 F.3d 510, 519 (7th Cir. 2015). In this case, plaintiffs have had two attempts to allege claims against defendant and have failed to indicate in their opposition brief what additional facts they could allege to state a viable claim against defendant. Because the parties largely agree with the facts that plaintiffs allege in the FAC, and the court has dismissed plaintiffs' claims based on issues of law and the interpretation of the alleged contract between plaintiffs and defendants, pleading additional facts would not save plaintiffs' claim from dismissal. See Villareal v. Chamberlain, 2019 WL 4736488 (S.D. Tex. Sept. 27, 2019) (applying college catalogue language in dismissing breach of contract claims and denying leave to amend because "allowing Plaintiff the opportunity to file another pleading would do nothing but prolong the inevitable").

Thorogood v. Sears, Roebuck and Co., 2006 WL 3302640, at *5 (N.D. Ill. Nov. 9, 2006). Unjust enrichment is an equitable remedy based on a contract implied in law and is thus available only when there is no adequate remedy at law. Guinn v. Hoskins Chevrolet, 361 Ill. App.3d 575 (Ill. Ct. App. 2005). Thus, where a contract governs the parties' relationship, the doctrine of unjust enrichment has no application. Id. A party may, however, plead in the alternative, and thus plead claims for breach of contract as well as unjust enrichment. Id. Where unjust enrichment claims incorporate by reference allegations of the existence of a contract between the parties, courts will dismiss the unjust enrichment claim. Thorogood, 2006 WL 3302640, at *5; Purizer Corp. v. Battelle Memorial Institute, 2002 WL 22014 (N.D. Ill. Jan. 7, 2002) (dismissing unjust enrichment claims because it incorporated by reference allegations of existing contracts); Guinn, 361 Ill.App.3d at 604-05 (where plaintiff's unjust enrichment claim incorporated by reference allegations of a contract governing the parties' relationship, unjust enrichment claim was properly dismissed).

Defendant contends that, although plaintiffs plead in the alternative, the unjust enrichment claim specifically incorporates allegations of the existence of a contract between the parties.[5] The court agrees and has thus come to the "inescapable conclusion that the present dispute arises out of an express contract." Shaw v. Hyatt International Corp., 2005 WL 2088438, *3 (N.D. Ill. Nov. 15, 2005). Even if plaintiffs had not incorporated the allegations of a contract, the unjust enrichment claim would still fail because the breach of contract claim fails. See Horist v. Sudler & Co., 941 F.3d 274, 281 (7th Cir. 2019) (where "an unjust enrichment claim rests on the same improper conduct alleged in another claim, …unjust enrichment will stand or fall with the related claim"). Consequently, Count II is dismissed with prejudice.

---

[5] Plaintiffs claim that the incorporation of the contract in Count II was "inadvertent."

Case 3:20-cv-00356   Document 70-2   Filed 02/01/21   Page 11 of 12 PageID #: 926

## **CONCLUSION**

For the reasons stated above, Defendant's motion to dismiss is granted. (Doc. 21). Gociman and Hickey are dismissed from the case for lack of standing, and Counts I and II are dismissed with prejudice.

Date: January 25, 2021

                                              Robert W. Gettleman
                                              United States District Judge